IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J. D. H.,[1]

        Plaintiff,

v.                                        Case No.  24-2385-JWB

FRANK BISIGNANO,
*Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits.  The matter is fully briefed and ripe for decision. (Docs. 5, 11, 14.)  The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I.    Facts and Procedural History**

On March 19, 2021, Plaintiff filed an application for disability insurance benefits and supplemental security income with the Social Security Administration under Title II of the Social Security Act.  (Tr. at 17.)[2]  He claims his disability began January 1, 2015.  (*Id.*)  Plaintiff's first hearing took place on May 5, 2022, before an Administrative Law Judge ("ALJ").  (Tr. at 17.)  The ALJ determined that Plaintiff was not entitled to disability benefits.  (*Id.* at 31.)  Plaintiff appealed that determination to the Social Security Administration's Appeals Council, which affirmed the ALJ.  (*Id.* at 6.)  Plaintiff then filed a complaint in this court alleging, among other things, that the ALJ abused her discretion in denying disability benefits.  (*Id.* at 804).  The Social Security

---

[1] Plaintiff's initials are used to protect privacy.
[2] The Tr. abbreviation is used to refer to the record throughout. The administrative record is contained at docket entry No. 4.

Administration filed an unopposed motion to reverse and remand for further administrative proceedings, which the district court granted.  (*Id.* at 806).  Following the court's order the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ for further proceedings. (*Id.* at 814).

A second hearing was held on May 9, 2024.  (*Id.* at 715).  A new ALJ again determined that the plaintiff was not entitled to disability benefits.  (*Id.* at 727).  Plaintiff alleges that he suffers from several impairments including: "uncontrolled diabetes mellitus (DM), Type II, adhesive capsulitis and calcific tendonitis in the right shoulder, migraine headaches, obesity, trigeminal neuralgia, hypertension, mast cell activation syndrome, idiopathic polycythemia, sleep apnea, erythrocytosis, and mixed hyperlipidemia" as well as other mental impairments.  (Doc. 5 at 1–2.) Because of these impairments, he claims that he cannot perform any work, including prior work. (*Id.* at 35.)  While the ALJ found that Plaintiff suffered from severe medical impairments, he also found Plaintiff's residual functional capacity ("RFC") to be at a level such that Plaintiff is "capable of performing past relevant work as a computer program supervisor."  (Tr. at 726).  Because Plaintiff was capable of performing previous work the ALJ determined that he was not entitled to receive disability benefits.  Plaintiff then filed the instant complaint.  (Doc. 1).

## II. Standard

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Id.*

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 416.920. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Id.* At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv). The RFC represents the most that the claimant can still do in a work setting despite his impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25

(2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## III.    Analysis

Plaintiff makes three primary challenges to the ALJ's decision. First, he contends that the ALJ's determination of Plaintiff's RFC regarding physical functional limitations is unsupported by substantial evidence. (Doc. 5 at 17.) Second, he contends that the ALJ's determinations of his mental functional limitations are unsupported by substantial evidence. (*Id.* at 30.) Finally, Plaintiff contends that at step four of the disability analysis the ALJ's determination that he can perform his prior work is unsupported by substantial evidence because Plaintiff's prior work is a "composite job." (*Id.* at 32.) The court considers each of Plaintiff's arguments.

### A. The Administrative Law Judge's Determination on Physical Functional Limitations is Supported by Substantial Evidence

#### 1.  *Right Shoulder*

Plaintiff first argues that the ALJ improperly discarded part of Dr. Braverman's medical opinion, which found that Plaintiff was limited to no overhead reaching with his right arm. (*Id.* at 17.) The ALJ found this part of Dr. Braverman's opinion "inconsistent with unremarkable imaging/limited objective testing of the claimant's right shoulder." (Tr. at 720.) Despite acknowledging the ALJ's rationale, Plaintiff argues that other evidence in the record is consistent

with Dr. Braverman's opinion and thus the ALJ has not given a "legitimate reason" for discarding only a portion of it. (Doc. 5 at 17.) Plaintiff characterizes the ALJ's decision as improperly "cherry picking" through the medical reports. In support of his proposition he cites *Hardman v. Barnhardt*, 362 F.3d 679, 681 (10th Cir. 2004) and *Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

In *Hardman*, the Tenth Circuit emphasized that "standard boilerplate language will not suffice" as it "fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining the claimant's complaints were not credible." 362 F.3d at 679. An ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). The Tenth Circuit reaffirmed this position in *Zachary*, 695 F.3d at 1166.

Here, the ALJ complied with those requirements. The ALJ spends a good portion of his decision explaining the evidence concerning Plaintiff's right shoulder. As the Commissioner points out, decisions of an ALJ must be read "as a whole." *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009). Moreover, simply because the ALJ did not discuss every piece of evidence in the RFC analysis does not mean the evidence was not considered. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) ("Neither *Clifton's* letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.").

Indeed, a review of the decision indicates that the ALJ did consider the evidence concerning Plaintiff's right shoulder. At his hearing, the "claimant testified his left shoulder is more painful than his right." (Tr. at 714.) "In September of 2021, he [Plaintiff] sought treatment with a primary care provider and exhibited tenderness to palpation of his right shoulder, but his range of motion was only limited in the proximal direction secondary to pain." (*Id.*) Plaintiff's

subsequent imaging "showed no more than stable tiny soft tissue calcifications adjacent to the greater tuberosity, possibly reflecting chronic calcific tendonitis." (*Id.*) At a physical therapy intake Plaintiff "exhibited full range of motion in his right shoulder despite pain with rotation, mild discomfort and slight weakness with strength testing, and negative orthopedic testing." (*Id.*) Plaintiff himself reported at the same meeting that "he only had pain with moving his arm 'back' and 'pushing off' with his right arm." (*Id.*) A later referral to an orthopedist did not result in "injection therapy, an MRI or surgical consultation." (*Id.*) Plaintiff did not follow up with his physical therapist or orthopedist after December 2021. (*Id.*) Also in December 2021, Plaintiff's pain management provider and endocrinologist "noted normal physical examinations."

The ALJ considered all the foregoing evidence. (*Id.*) Additionally, the ALJ acknowledged and explained why he came to a different conclusion on the issue of Plaintiff's right shoulder than the first ALJ who reviewed Plaintiff's case.[3] (*Id.*) The ALJ did not merely rely on Dr. Braverman as Plaintiff's alternative argument presupposes (Doc. 5 at 18) and these are not the kinds of bare recitations that suffice for reversal. *Hardman*, 362 F.3d at 681. Plaintiff seeks to have the court reweigh the evidence in a manner different from the ALJ. This court declines that invitation because, as explained above, its role is limited to ensuring the ALJ's decision is supported by substantial evidence. *Noreja v. Commissioner, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020). Here, it is.

### 2. Migraine Headaches

---

[3] "The undersigned acknowledges that the previous administrative law judge found his right shoulder impairment was severe and limited his ability to manipulate objects, including his ability to reach overhead (Ex. 9A). The Appeals Council ordered the undersigned to give further consideration to the claimant's residual functional capacity, and additional evidence received after the previous administrative law judge's decision, including but not limited to essentially unremarkable imaging of his right shoulder, is inconsistent with significant limitations in the claimant's ability to manipulate objects after he stopped engaging in substantial gainful activity in August 2020." (Tr. at 714.)

Plaintiff's second objection is that the ALJ found no limitations arising from Plaintiff's migraines. (Doc. 5 at 26–28.) Chiefly, Plaintiff argues that the ALJ's reliance on unremarkable neurological examinations is misplaced because unless Plaintiff was under the effects of a migraine at the time of the examination, no neurological symptoms would be expressed. (*Id.* at 27.) If this were the only evidence upon which the ALJ relied, this court would agree with Plaintiff. But here the ALJ looked to various parts of the administrative record. (Tr. at 718–19.) The ALJ noted that despite Plaintiff's headaches beginning in 2008, the plaintiff worked for several years afterward. (*Id.*) The ALJ recognized Plaintiff's emergency room visits but correctly noted that Plaintiff had undergone a number of treatments with varying degrees of success. (*Id.*) Additionally, the ALJ referenced treatment notes that indicated Plaintiff was "quick to refuse additional medication trials for his headaches" and provider notes that said he "had not given Trileptal a 'fair' chance." (*Id.*)

Plaintiff objects that before an ALJ may consider a claimant's failure to use a particular treatment (such as the aforementioned Trileptal) it must evaluate if the claimant has a justifiable reason for avoiding treatment. 20 C.F.R. § 404.1530(c); *see also Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). He argues that the record shows that for some treatments Plaintiff was "rationing his test strips, was unable to afford certain medications, and was limited in obtaining certain medications by his insurance." (Doc. 5 at 28.) But none of these examples cited by Plaintiff pertain to his refusal to give Trileptal a "fair chance" nor his refusal of additional treatment options. Furthermore, in one of the examples cited by Plaintiff, a doctor's note indicates Plaintiff reported he is "able to afford other medications well." (Tr. at 685.) Plaintiff raised no other justification for his avoidance of treatment and none of the evidence cited by Plaintiff pertains to Trileptal. Accordingly, the ALJ was permitted to consider these circumstances, as no justification was provided by Plaintiff, who bears the burden of proving his RFC. *See Clarification of Rules*

*Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51153-01, 51155 (Aug. 26, 2003) ("However, as stated by the Supreme Court, 'It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.'") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987)).

### 3.  Developing the Record

Plaintiff next argues that the ALJ had a duty to further develop the record and "obtain[] some medical opinion or medical evidence as to Plaintiff's functional limitations stemming from his 'severe' DM, migraine headaches, obesity, and trigeminal neuralgia." (Doc. 5 at 21.)  This argument presupposes that the ALJ did not have sufficient evidence upon which to base his stated functional limitations.  Even assuming this is true, an ALJ has "broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (internal citations omitted).  The Tenth Circuit has opined that a consultative examination is expected where "there is a direct conflict in the medical record requiring resolution, or where the medical evidence in the record is inconclusive." *Id.*  As the Commissioner points out, Plaintiff never requested a consultative evaluation or further findings below.  (Doc. 11 at 18.)

As to Plaintiff's more general allegation that "there is no medical evidence as to Plaintiff's functional limitations stemming from his 'severe' DM, migraine headaches, and trigeminal neuralgia," this is simply untrue.  (Doc. 5 at 22.)  The ALJ's decision is littered with discussion of the evidence of limitations stemming from these impairments.  (Tr. at 718-21); *see McDonald v. Astrue*, 492 Fed.Appx. 875, 885 (10th Cir. 2012) ("We [have] rejected the argument that the limitations in an ALJ's mental RFC assessment must always be supported by a specific medical opinion, noting that 'there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.' To the

8

contrary, 'the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'") (quoting *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012)).

After discussion of Plaintiff's conditions, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms *are not entirely consistent with the medical evidence and other evidence in the record*." (Tr. at 718) (emphasis added).

For example, the ALJ considered Plaintiff's own description of what activities he could perform on non-headache days. (*Id.*) Plaintiff is "able to engage in basic daily activities, including household chores, cooking, working on his motorcycle, [and] mowing the lawn with a riding lawn mower." (*Id.*) Plaintiff complains that the ALJ's use of this description is of no moment because it concerns Plaintiff's *non-headache* days. (Doc. 5 at 27-28.) But the description is indicative of how Plaintiff's RFC is affected by impairments *other* than his migraines. Moreover, as the Commissioner points out, Plaintiff's migraines and trigeminal neuralgia began years before he alleged disability and even longer before Plaintiff ceased working. (Doc. 11 at 6.) The ALJ considered this fact and noted that the Plaintiff had enjoyed varying degrees of positive response to treatment for his migraines. (Tr. at 718.)

This is exactly the kind of evidence an ALJ should look to when evaluating a claimant's RFC. *McDonald*, 492 Fed. Appx. at 886 ("Thus, we reject McDonald's contention that an ALJ is not competent, in the absence of a medical opinion, to assess the severity of mental symptoms and determine the extent of the limitations that result based on the evidence in the claimant's medical records, her daily activities, and her positive response to medications. That is precisely the type of evidence an ALJ should consider in determining a claimant's RFC. An ALJ makes that assessment

based on *all* the evidence in the case record, both medical and non-medical.")  It is on these bases that the ALJ, despite finding that Plaintiff's impairments would be classified as severe, found that Plaintiff's description of his "daily activities did not indicate significant limitations." *Wilson*, 602 F.3d at 1146.  The evidence relied upon by the ALJ discounts Plaintiff's claims of "a disabling level of pain, *no matter the source*." *Id.* (emphasis added).  More importantly for this court's purposes, however, is that the record indicates the ALJ relied upon a host of medical evidence and was not under an obligation to further develop the record.

### 4.  *"Connecting the Dots"*

Plaintiff's final objection regarding the ALJ's determination of his physical functional limitations is that the ALJ did not "connect the dots" between the evidence and the conclusions reached.  (Doc. 5 at 24.)  He compares this case to *Kempel v. Astrue,* 5:08-CV-04130-JAR, (R. & R. Dec. 14, 2009, Doc. 24, *aff'd* by D. Kan. Jan. 4, 2010, 2010 WL 58910 at *8).  The *Kempel* court chastised a different ALJ for:

> Follow[ing] a procedure which appears to have become an ever-increasing practice when assessing RFC in Social Security decisions. He summarized the legal standard for assessing RFC. He summarized the record evidence, beginning with a summary of plaintiff's testimony. He summarized the medical evidence of record.  The ALJ stated his credibility analysis and finding . . . and then stated his evaluation of the medical opinions. . . .
>
> Nowhere did the ALJ relate the evidence to his findings regarding the medical opinions, or cite specific medical facts to describe how the evidence supports each RFC conclusion. He summarized the evidence and stated the conclusions he drew, but he did not explain why that evidence requires those conclusions, or the analysis used to reach the conclusions. It is as if the ALJ distinguished all of the medical opinions in the record and then produced his own RFC assessment out of whole cloth.

2010 WL 58910 at *8 (internal citations omitted).  While this court agrees that such practice is insufficient in social security cases, this case does not look much like *Kempel*.  The preceding sections of this opinion already help demonstrate this point.

In addition, there are a plethora of examples of the ALJ connecting the evidence to its conclusions.  For example, in his discussion of Plaintiff's Mast Cell Activation Syndrome ("MCAS"), the ALJ covered the relevant medical history but then went on to list specific mitigating medical facts, concluding that "claimant's MCAS, allergic rhinitis, chronic sinusitis, and sleep apnea are non-severe impairments . . . ." (Tr. at 713.)  Consider also the ALJ's discussion of the plaintiff's migraines and headaches.  (*Id.* at 718-19.)  The ALJ evaluated various pieces of medical evidence in the record before again explaining that certain facts contradicted Plaintiff's claims.  (*Id.*)  After reviewing said evidence the ALJ explained "the claimant's positive response to treatment, including only conservative treatment during acute exacerbations, is inconsistent with the intensity and frequency of left cheek pain and headaches alleged." (*Id.* at 719.)  Finally, in his discussion of obesity, after explaining Plaintiff's condition the ALJ found "an individual may have limitations in any of the exertional functions, postural functions, or in his ability to tolerate extreme heat, humidity, or hazards because of obesity."  (*Id.* at 720.)

The ALJ's analysis belies Plaintiff's assertion that the disability decision here looks like the one in *Kempel*.  Instead, the ALJ did an adequate job demonstrating his rationale to the district court and enabled meaningful review.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

**B. The Administrative Law Judge's Determination on Mental Functional Limitations is Supported by Substantial Evidence**

Plaintiff's second claim is that the ALJ's decision not to impose any mental functional limitations conflicts with its decision to find Dr. Sen's medical opinion persuasive. (Doc. 5 at 31.) An ALJ's failure to explain why an RFC conflicts with a medical opinion is reversible error. *M.H. v. Saul*, Case No. 19-1214-JWB, 2020 WL 916856 at *4. Here, the ALJ found Dr. Sen's opinion persuasive. (Tr. at 715-16.) Upon inspection of the record, Dr. Sen's opinion notes that the "the claimant did not allege a mental impairment." (*Id.* at 125.) Furthermore, the notes reveal: "As the claimant reports no current mental health limitations and *no functional limitation due to psych*, a severe mental MDI is not indicated." (*Id.*) Later in the document Dr. Sen specifies "all evidence indicates mild mental limitations. Agree with non-severe MDI." (*Id.*) But Dr. Sen's opinion never indicates how those "mild mental limitations" translate to mental limitations in Plaintiff's RFC. Dr. Sen found that Plaintiff has no "communicative" or "visual" limitations. (*Id.* at 129.) Dr. Sen's environmental limitations are justified by obesity, not mental conditions. (*Id.* at 130.) The remainder of the limitations expressed in Dr. Sen's RFC are physical limitations again justified by obesity. (*Id.* at 128-29.)

As a result, Plaintiff's argument that the ALJ was obligated to accept Dr. Sen's opinion on mental functional limitations fails because Dr. Sen recommended no such limitations. (*Id.* at 129.) What's more, as the Commissioner points out, the ALJ reviewed additional evidence in the administrative record that concerned Plaintiff's mental condition. (*Id.* at 715-16.) On this basis, the court finds that the ALJ's determination on mental functional limitations is supported by substantial evidence.

### C. The Administrative Law Judge's Determination on Step Four of the Disability Analysis is Supported by Substantial Evidence

Plaintiff's final argument is that after completing the RFC, the ALJ improperly determined that Plaintiff could conduct his past work despite his RFC limitations. (Doc. 5 at 33.) Primarily,

Plaintiff asserts that the ALJ did not consider his previous work as a "composite job." (*Id.*) A composite job is one that contains "significant elements" of two or more jobs and the role has no equivalent within the Dictionary of Occupational Titles ("DOT"). *Speidel v. Kijakazi*, 683 F.Supp.3d 1264, 1268 (D. Kan. 2023) (citing *Past Relevant Work (PRW) As The Claimant Performed It,* SSA Program Operations Manual System, DI 25005.020, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last visited August 20, 2025)). "Because a composite job does not have a DOT counterpart, a claimant is capable of working a composite job only if 'she can perform all parts of the job' as she previously performed it." *Kijakazi*, 683 F.Supp.3d at 1268.

The ALJ found that Plaintiff's prior employment was that of a "computer program supervisor." (Tr. at 721.) Plaintiff contends that the vocational experts ("VE") employed by the SSA found that he performed two different jobs in the DOT. (Doc. 5 at 34.) Additionally, at his hearing Plaintiff testified that his last job title prior to filing for disability was that of "application developer supervisor" and that the job consisted of "60% managerial duties, 20% coding/development, and 20% administrative duties." (*Id.* at 33) (cleaned up). Plaintiff then alleges since he performed elements of a job outside of those described by the ALJ, he is entitled to a composite prior work classification. (*Id.*) Plaintiff's argument fails because the VE testimony he references does not describe plaintiff's prior work as one role combining elements of two different jobs but rather describes two different roles performed by Plaintiff *at different points in his career*. (Tr. at 75.) As the Commissioner points out, no VE testified that Plaintiff performed a composite job, and Plaintiff never raised the issue of a composite job before the ALJ. (Doc. 11 at 22-24.) Failure to do so forecloses error. *Gay v. Sullivan*, 986 F.2d 1336, 1340, n.2 (10th Cir. 1993).

**IV.    Conclusion**

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.  Dated this 27th day of August 2025.

s/ John Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
